UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>          Plaintiff,<br><br>               v.<br><br>WELLS FARGO BANK, NA,<br><br>          Defendant. | Civil No.  12-1150 (JDB) |

## MEMORANDUM OPINION & ORDER

Plaintiff United States of America and Defendant Wells Fargo Bank, NA ("Wells Fargo") request that the Court enter a consent order to resolve the United States' civil action brought to enforce the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, and the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619 [Docket Entry 2]. For the reasons set forth below, the Court will grant the joint motion.

## BACKGROUND

On July 12, 2012, the United States filed a complaint against Wells Fargo, alleging that it discriminated against more than 34,000 African American and Hispanic borrowers in its residential mortgage lending operation. Compl. ¶ 1 [Docket Entry 1]. The complaint alleges that some African American and Hispanic borrowers received subprime, rather than prime, loans and that some paid higher fees and costs because of their race or national origin. Compl. ¶¶ 2, 3, 23, 51.  It further alleges that Wells Fargo's policies in effect between 2004 and 2009 allowed employees to make decisions about the type of loan product offered and the loan price in a

1

manner disconnected from objective criteria like credit risk, that these policies set up financial incentives for employees and mortgage brokers to impose unfavorable terms, and that the policies lacked safeguards to prevent and remedy racial and ethnic disparities. Compl. ¶¶ 5, 27-29, 76.

Also on July 12, 2012, the parties filed with the Court a proposed consent order. In agreeing to the consent order, Wells Fargo does not admit any of the allegations in the complaint. Rather, in recognition of the risks inherent to litigation, both sides agree to a set of terms while maintaining that each would have prevailed in litigation. Briefly, Wells Fargo will pay at least $125 million to compensate borrowers who were allegedly aggrieved. Consent Order ¶ 17. Wells Fargo also agrees to expend $50 million to provide down-payment assistance to low-income borrowers in metro areas hardest hit by the subprime loan foreclosure crisis. Consent Order ¶ 30. Under the consent order, Wells Fargo will maintain its policies (implemented after the events alleged in the complaint) that disconnect compensation from a loan's terms and conditions. Consent Order ¶¶ 4-11. The consent order also has various provisions to assure compliance, including regular reporting requirements. Consent Order ¶¶ 10-11, 38-40. [1]

## STANDARD OF REVIEW

"[P]rior to approving a consent decree a court must satisfy itself of the settlement's overall fairness to beneficiaries and consistency with the public interest." Citizens for a Better Env't v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (internal quotation marks omitted). The Court's function is not to "inquire into the precise legal rights of the parties nor reach and resolve

---

[1] In a telephone conference with the parties on July 27, 2012, the Court requested further justification for entering the consent order, which the parties provided on August 10, 2012. On August 23, 2012, the parties asked for a brief delay in the Court's ruling while they resolved a technical issue with the proposed agreement. On September 4, 2012, they advised the Court that the issue was resolved and consideration of the consent order could proceed.

the merits of the claims or controversy," but "only [to] determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." Id. (internal quotation marks omitted); see also United States v. District of Columbia, 933 F. Supp. 42, 46-47 (D.D.C. 1996).

Approving a consent decree "is a judicial act," and the Court undertakes it with care. See United States v. Microsoft Corp., 56 F.3d 1448, 1462 (D.C. Cir. 1995). But, short of a decree that "make[s] a mockery of judicial power," the Court should accept an agreement between the parties. Id. As this circuit has recognized, "voluntary settlement of civil controversies is in high judicial favor." Citizens for a Better Env't, 718 F.2d at 1126 (alteration and internal quotation marks omitted); see also id. at 1127 n.11 ("It would be especially unfortunate if a lack of judicial restraint stifled the evolution of less adversarial approaches to developing regulations.").

## ANALYSIS

Against this backdrop, the Court reviews whether the agreement was validly consented to and is fair, reasonable, and consistent with the public interest.

**Consent:** Both parties represent that the settlement is a product of good-faith, arms-length negotiation. Supplemental Br. in Supp. of Joint Mot. (Aug. 10, 2012) [Docket Entry 7] at 2 ("Supp. Br."). The content of the consent order supports this representation, for it provides benefits to both sides and carefully limits and defines the agreement's requirements, reflecting extensive negotiation.  Finally, the parties' status—Wells Fargo is a private, sophisticated, counseled litigant, and the plaintiff is the United States government itself—strongly supports a finding of valid consent.

**Fairness:** Valid consent that resulted from good faith bargaining itself indicates that the agreement is procedurally fair. Moreover, the possibility of a conflict of interest is particularly low in this suit: unlike a class action settlement where the possibility of collusion between the defendant and class counsel demands significant judicial scrutiny, a suit brought by the United States under the ECOA and FHA does not pose such potential conflicts of interest. See United States v. City of Miami, 614 F.2d 1322, 1332 n.18 (5th Cir. 1980).

Next, the Court finds the agreement substantively fair. Both parties "believe that they would have prevailed at trial," but "both acknowledge the significant risk inherent in engaging in further litigation." Supp. Br. at 2. The agreement reflects a compromise that addresses many of the United States' concerns and does so through terms Wells Fargo finds acceptable. The Court notes that Wells Fargo's denial of the allegations in the complaint poses no barrier to approving the consent order. See Microsoft Corp., 56 F.3d at 1461 ("criticism of Microsoft for declining to admit that the practices charged in the complaint actually violated the antitrust laws was . . . unjustified"); see also SEC v. Citigroup Global Mkts. Inc., 673 F.3d 158, 165 (2d Cir. 2012) (per curiam) ("Finally, we question the district court's apparent view that the public interest is disserved by an agency settlement that does not require the defendant's admission of liability. Requiring such an admission would in most cases undermine any chance for compromise.").

**Reasonableness:** In examining the remedies the parties consent to, it is

> inappropriate for the judge to measure the remedies in the decree as if they were fashioned after trial. Remedies which appear less than vigorous may well reflect an underlying weakness in the government's case, and for the district judge to assume that the allegations in the complaint have been formally made out is quite unwarranted.

Microsoft Corp., 56 F.3d at 1461. This agreement is eminently reasonable, and easily survives the limited scrutiny appropriate for the Court to undertake.

The consent order is carefully tailored to ending the policies and practices that allegedly led to discrimination, and to assuring that no discrimination occurs in the future. It details specific policies that address the allegations the United States made in its complaint and provides for extensive review and reporting to assure any future problems are promptly discovered and averted.

In addition to its prospective reach, the consent order has a significant compensatory component, with Wells Fargo agreeing to pay at least $125 million to compensate allegedly aggrieved borrowers. The United States has identified thousands of individuals who will be eligible to receive up to $140,000 of compensation, and, if they choose to participate, will receive these payments much sooner than they would have had the case gone to trial. Wells Fargo will also expend an additional $50 million to provide down-payment assistance to low-income borrowers, a program the parties expect to benefit at least 3,000 families. The agreement thus offers a significant benefit to the United States. At the same time, it is fair to Wells Fargo: despite denying that any compensation is warranted, Wells Fargo finds the requirement that it make these payments fair because it "adequately reflects its litigation risk," Supp. Br. at 8. The Court trusts this well-counseled assessment of the agreement's fairness towards Wells Fargo.

**Public Interest:** Finally, the Court must ensure that the agreement is "consisten[t] with the public interest," Citizens for a Better Env't, 718 F.2d at 1126 (internal quotation marks omitted); in other words, that the agreement is "not unlawful, unreasonable, or against public policy," District of Columbia, 933 F. Supp. at 47.

Entry of this consent order will not automatically affect the rights of third parties. Rather, those borrowers the United States identifies as allegedly aggrieved persons have the option of

5

signing a release in exchange for receiving payments from the settlement fund. Those who decline to do so will be in precisely the same position as they are at present. Nor does the agreement harm public interest more generally, say by permitting certain discriminatory practices in violation of the ECOA or the FHA.  On the contrary, the consent order focuses heavily on eradicating the possibility of discrimination in the future. The agreement hence does not harm the public interest in any way. The Court must give the government "rather broad discretion to settle with the defendant within the reaches of the public interest," Microsoft Corp., 56 F.3d at 1461, and this agreement falls squarely within the range of permissible discretion.

## CONCLUSION

The Court finds that both parties validly consented to the agreement, and it is fair, reasonable, and consistent with the public interest.

For the reasons stated above, it is hereby

**ORDERED** that [2] the joint motion for entry of consent order is **GRANTED**; and it is further

**ORDERED** that [2-1] the consent order is **ENTERED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: September 20, 2012